1  **WO**

2

3

4

5

6

7

8

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

10  Southwest Fair Housing Council,                No. CV-19-00180-TUC-RM

11                    Plaintiff,                   **ORDER**

12  v.

13  WG Scottsdale LLC,

14                    Defendant.

15

16         Pending before the Court is Plaintiff's Motion in Limine to Preclude Testimony of

17  Defense Rebuttal Expert Robert Q. Pollard. (Doc. 69.) Defendant responded in

18  opposition. (Doc. 70.) The Court held an evidentiary hearing pursuant to *Daubert v.*

19  *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), on September 29, 2021. Upon

20  considering the written briefing by the parties and the testimony and argument presented

21  at the evidentiary hearing, the Court will grant in part and deny in part the Motion in

22  Limine.

23         Plaintiff's Motion in Limine moves to preclude the testimony of Defendant's

24  rebuttal expert witness Robert Q. Pollard, Ph.D. pursuant to Federal Rule of Evidence

25  702 and *Daubert*, 509 U.S. 579. (Doc. 69.) Plaintiff argues that the testimony should be

26  precluded because (1) Dr. Pollard is not a qualified expert, (2) the testimony is unreliable

27  because Dr. Pollard does not explain how his experience leads to his conclusions nor

28  does he explain his methodology; (3) Dr. Pollard intends to testify as to pure

1    unsubstantiated speculations or beliefs and/or legal conclusions; and (4) Dr. Pollard

2    intends to testify to Defendant's employee's state of mind. (*Id.* at 2.) Plaintiff further

3    argues that Dr. Pollard's testimony would violate Fed. R. Evid. 403 by confusing and

4    misleading the jury and unduly prejudicing Plaintiff while providing little probative

5    value. (*Id.*) Thus, Plaintiff seeks preclusion of the testimony or, in the alternative, an

6    Order limiting Dr. Pollard's testimony to the narrow issue of rebutting Plaintiff's expert's

7    testimony regarding communications with deaf persons in a nursing home setting. (*Id.*)

8        In response, Defendant argues that Dr. Pollard's testimony should be admitted

9    because (1) Dr. Pollard is a qualified expert; (2) the testimony is reliably based on his

10   extensive experience in discrimination cases involving deaf individuals; (3) he will not

11   offer legal conclusions or testimony concerning Defendant's employee's state of mind;

12   (4) the testimony will help the jury because it is relevant to the factual issues the jury will

13   be deciding; and (5) Dr. Pollard was disclosed as an initial expert and is not limited to the

14   role of a "rebuttal expert." (Doc. 70.)

15   **I.    Legal Standard**

16       "Evidence is relevant if (a) it has any tendency to make a fact more or less

17   probable than it would be without the evidence; and (b) the fact is of consequence in

18   determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if

19   its probative value is substantially outweighed by a danger of one or more of the

20   following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

21   wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

22       Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of

23   Evidence, which provides:

24           A witness who is qualified as an expert by knowledge, skill,
             experience, training, or education may testify in the form of
25           an opinion or otherwise if: (a) the expert's scientific,
             technical, or other specialized knowledge will help the trier of
26           fact to understand the evidence or to determine a fact in issue;
             (b) the testimony is based on sufficient facts or data; (c) the
27           testimony is the product of reliable principles and methods;
             and (d) the expert has reliably applied the principles and
28

- 2 -

methods to the facts of the case.

Fed. R. Evid. 702. This rule requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. To do so, the court must assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. This gatekeeping function applies not only to expert testimony based on "scientific" knowledge but also expert testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-49 (1999). Its purpose is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

Factors relevant to the reliability of expert testimony include, but are not limited to, whether the theory or technique used by the expert "can be (and has been) tested," whether it "has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards controlling the technique's operation," and the degree of acceptance in the relevant community of expertise. *Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 149-50. In assessing the reliability and helpfulness of proffered expert testimony, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702, Advisory Committee Notes (2000) (internal citations omitted).

Rule 702's "helpfulness" standard requires that expert testimony be relevant to issues in the case and that there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591. An expert's opinions may not be premised on "subjective belief or unsupported speculation." *Id*. at 590 (internal quotation marks omitted). Relevancy requires that "[t]he evidence ... logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

The Court's gatekeeping obligation under Rule 702 is "a flexible one" that "must

1    be tied to the facts of a particular case." *Kumho Tire* at 150. Thus, "the trial judge must

2    have considerable leeway in deciding in a particular case how to go about determining

3    whether particular expert testimony is reliable." *Id*. at 152. Whether to admit expert

4    testimony is subject to the discretion of the Court. *See General Elec. Co. v. Joiner*, 522

5    U.S. 136, 143 (1997).

6           **II.    Background**

7           Dr. Pollard is a Clinical Professor of Psychiatry at the University of Rochester

8    School of Medicine in Rochester, New York. (*See* Doc. 69-1.) He is also a Professor and

9    Associate Dean of Research at the Rochester Institute of Technology's National

10   Technical Institute for the Deaf ("NTID"). (*Id*.) His career has been dedicated to "the

11   subject of psychology and deaf individuals and related topics such as sign language

12   interpreting, and public health and the deaf population." (*Id*. at 12.) He has been a faculty

13   member in the Department of Psychiatry at the University of Rochester School of

14   Medicine for 29 years. (*Id*.) He founded the University's Deaf Wellness Center, which

15   conducts a variety of clinical service, training, research, and scholarship activities. (*Id*.)

16   In August 2016, he became the first permanent Associate Dean of Research at the NTID.

17   (*Id*.) There, he is responsible for the NTID's research activities and oversees training

18   grants and contract activities. (*Id*.) He engages in clinical service and research and has

19   published over 100 articles, books, and book chapters, served as principal investigator on

20   55 grants totaling over $6M, delivered over 250 invited addresses throughout the U.S.

21   and abroad, and made over 100 conference presentations. (*Id*.) He has also served as an

22   expert witness in over 30 cases alleging discrimination against a deaf individual. (*Id*. at

23   10.)

24          The opinions expressed in Dr. Pollard's report are based upon his review of

25   Plaintiff's expert Dr. Shepard-Kegl's report, along with his experience and knowledge in

26   the fields of psychology and deafness and related topics. (*See id*. at 5.) Dr. Pollard's

27   expert report first reviews the conclusions of Dr. Shepard-Kegl's report and responds to

28   specific statements contained therein. (Doc. 69-1 at 4-6.) Specifically, Dr. Pollard

1   describes Dr. Shepard-Kegl's report as "incongruous" because of the distinction between

2   the "heterogeneity" and variability of deaf individuals—i.e. their unique abilities, needs,

3   and preferences—and Dr. Shepard-Kegl's application of "general" information regarding

4   deaf individuals to the fictional deaf grandmother present in this case. (*Id*. at 5-6; *see also*

5   Doc. 65.)

6      Dr. Pollard's expert report then reviews the transcripts of testers' communications

7   with Defendant's staff and analyzes the extent to which those interactions and/or

8   communications are consistent with his knowledge and experience regarding deaf

9   individuals. (*Id*. at 7-10.) Dr. Pollard points out purported inconsistencies between the

10  substance of the transcripts and Plaintiff's arguments regarding the denial of a reasonable

11  accommodation to a deaf individual; for example, that Plaintiff's tester does not disclose

12  until well into her conversation with Defendant's employee that the fictional grandmother

13  is deaf or that the grandmother has the ability to read and write, as well as the tester's

14  failure to raise the issue of reasonable accommodations when discussing her

15  grandmother's activities such as going to the movies or restaurants. (*Id*.)

16     Dr. Pollard concludes that the "general" nature of Dr. Shepard-Kegl's expert

17  report renders it not relevant to this litigation because it addresses neither a specific deaf

18  individual nor anything specific regarding Defendant's assisted living facility. (*Id*. at 10.)

19  He further concludes that the report fails to thoroughly address the tester's data that might

20  suggest a different outcome than that argued by Plaintiff. (*Id*.) Lastly, he concludes that

21  the Defendant in this case did not fail to do what was needed to meet the fictional deaf

22  individual's reasonable accommodation needs. (*Id*.)

23     **III.   *Daubert* Hearing**

24     The Court held a *Daubert* hearing on September 29, 2021, at which Dr. Pollard

25  testified as to his qualifications, methodology, experience, and conclusions, and each

26  party presented its arguments as to why Dr. Pollard's expert testimony should be either

27  excluded or admitted. Dr. Pollard testified that his knowledge of reasonable

28  accommodations for deaf individuals stems from his professional experience, his

1   published research, his previous testimony in approximately fifty civil cases involving an

2   American Sign Language ("ASL") interpreter as a reasonable accommodation, and his

3   personal lived experience. Dr. Pollard then testified as to the methodology that he would

4   use to determine whether an ASL interpreter was a reasonable accommodation for a deaf

5   individual. He testified that he would consider two categories of information: information

6   about the deaf individual and information about the situation or circumstance in which

7   the interpreter was purportedly necessary. As to a deaf individual, Dr. Pollard testified

8   that he would consider (1) the individual's preferred communication modality; (2) the

9   individual's proficiency in that modality; (3) whether the individual uses hearing aids or

10  other assistive technologies; (4) the individual's "fund of information," that is, the

11  quantity and quality of the information or knowledge they possess; and (5) whether the

12  individual has other developmental issues. As to a situation or circumstance, Dr. Pollard

13  testified that he would consider (1) the stakes of the situation—for example, a medical

14  procedure (high stakes) vs. a sales transaction (low stakes); (2) the communication

15  methods used in the situation; and (3) the extent of hearing individuals' knowledge about

16  deaf individuals and deafness.

17  **IV.    Discussion**

18  **A. Dr. Pollard is a qualified expert.**

19      Plaintiff argues first that Dr. Pollard is not a qualified expert because (1) he has no

20  experience working in assisted living facilities that serve deaf individuals; (2) he has not

21  testified as an expert witness at a civil trial in the past four years; and (3) he has no

22  experience evaluating testers in fair housing cases. (Doc. 69 at 3.) In response, Defendant

23  contends that the fact that Dr. Pollard has no experience working in an assisted living

24  facility and has not testified at a civil trial in the last four years does not undermine his

25  extensive experience with the issues involving reasonable accommodations for deaf

26  individuals that the jury will decide and thus he is a qualified expert. (Doc. 70 at 4-5.)

27      The Court finds that Dr. Pollard is a qualified expert. His extensive experience

28  working with deaf individuals in professional, clinical, research, and personal settings

1    qualify him as an expert on the matters to which his testimony pertains. Furthermore, Dr.

2    Pollard has testified as an expert in at least thirty civil legal cases. The Court finds no

3    basis upon which to question his qualifications as an expert witness.

4            **B. Dr. Pollard's testimony will be helpful to the jury.**

5            Plaintiff also argues that Dr. Pollard's testimony would not be helpful to the jury

6    because it merely recounts the Complaint and summarizes documents, both of which the

7    jury will be able to view and evaluate for itself. (Doc. 69 at 6.) Plaintiff argues that Dr.

8    Pollard's testimony does not provide information beyond that of a typical lay person and

9    that the jury can accomplish its own analysis of the evidence without Dr. Pollard's

10   opinions. (*Id*.) In response, Defendant contends that Dr. Pollard has specialized

11   knowledge and experience that will assist the jury in determining whether an ASL

12   interpreter was necessary to ensure effective communication under the circumstances

13   present in this case, and that this issue is beyond the scope of a typical juror's knowledge.

14   (Doc. 70 at 6-7.)

15           The Court finds that Dr. Pollard's testimony will assist the jury in its fact-finding

16   duties to the extent it is admissible as set forth in this Order, except for his testimony that

17   Defendant did not fail or refuse to provide an ASL interpreter, discussed *infra* at Section

18   IV(E).

19           **C. Dr. Pollard's rebuttal testimony regarding Dr. Shepard-Kegl's expert**

20   **report is admissible.**

21           Plaintiff argues that if Dr. Pollard is permitted to testify, he should be limited to

22   rebuttal testimony only. (Doc. 69 at 8.) Plaintiff contends that Dr. Pollard was only

23   engaged in this case to rebut the opinions of its expert witness, Dr. Shepard-Kegl, and

24   thus to whatever extent his report exceeds the bounds of Dr. Shepard-Kegl's report it

25   should be excluded. (*Id*. at 8-9.) In response, Defendant contends that it disclosed Dr.

26   Pollard as its initial expert and did not identify him solely as a rebuttal expert, and thus he

27   is not limited to acting in that capacity. (Doc. 70 at 7-8.)

28           Plaintiff does not dispute Dr. Pollard's rebuttal testimony. As the Court has found

1    Dr. Pollard to be a qualified expert and has also found that his testimony will be helpful

2    to the jury, his testimony rebutting Dr. Shepard-Kegl's report is admissible. The Court

3    further finds that Defendant disclosed Dr. Pollard as an initial expert and therefore his

4    testimony is not limited to rebuttal testimony on that basis. (*See* Doc. 70 at 7.)

5        **D. Dr. Pollard's testimony is not reliable regarding whether an ASL**

6    **interpreter was a reasonable accommodation for the fictional deaf grandmother.**

7        Plaintiff argues that Dr. Pollard's testimony is unreliable because he has not

8    explained how his experiences in clinical psychology led to the conclusions he reached,

9    why his experience is sufficient, or how he applied his experience to the facts. (Doc. 69 at

10   4.) Thus, Plaintiff argues, because Dr. Pollard has not demonstrated a reliable

11   methodology for forming his opinions, they must be excluded. (*Id.*) In response,

12   Defendant contends that Dr. Pollard's professional and expert witness experiences are

13   directly relevant to the issues that the jury will decide and that throughout his report, Dr.

14   Pollard explains why he reached the conclusions he did. (Doc. 70 at 5-6.)

15       The Court agrees with Plaintiff that Dr. Pollard has failed to adequately explain

16   how his experience and knowledge apply to the issue of whether an ASL interpreter was

17   necessary as a reasonable accommodation in this case. Specifically, Dr. Pollard testified

18   at the *Daubert* hearing that his methodology in determining whether an ASL interpreter

19   would be a reasonable accommodation for a deaf individual includes an evaluation of (1)

20   the individual's preferred communication modality; (2) the individual's proficiency in

21   that modality; (3) whether the individual uses hearing aids or other assistive technologies;

22   (4) the individual's "fund of information," that is, the quantity and quality of the

23   information or knowledge the individual possesses; and (5) whether the individual has

24   other developmental issues. There is no evidence in Dr. Pollard's report or his hearing

25   testimony that he applied these factors to the fictional deaf grandmother who was the

26   prospective tenant of Defendant's facility. Indeed, Dr. Pollard testified that he did not

27   have enough information about the fictional deaf grandmother to evaluate her need for an

28   interpreter based on those factors. Thus, there is no way that Dr. Pollard could have

1    properly applied his methodology to the facts at issue. *See Daubert*, 509 U.S. at 592-93.

2    Accordingly, Dr. Pollard's testimony regarding the fictional deaf grandmother's need or

3    lack thereof for an ASL interpreter will be excluded.

4        However, Dr. Pollard's testimony is admissible to the extent that it sets forth his

5    opinions about how the relative of a deaf individual—in this case, Plaintiff's tester—

6    would behave or communicate in the situation present in this case. Dr. Pollard also may

7    testify to his opinion that the tester did not provide Defendant's employee Mr. Ommegard

8    with sufficient information for Defendant to be able to determine whether an ASL

9    interpreter was necessary as a reasonable accommodation. Dr. Pollard adequately

10   explained how he applied his methodology in evaluating the actions and communications

11   of Plaintiff's tester, and his expert opinions on this matter will assist the jury in its fact-

12   finding.

13       **E. Dr. Pollard's conclusions regarding whether Defendant failed to provide a**

14   **reasonable accommodation are inadmissible.**

15       Plaintiff argues that Dr. Pollard's opinions offer pure conclusions of law and thus

16   are not admissible under Federal Rule of Evidence 702. (Doc. 69 at 6.) Specifically,

17   Plaintiff takes issue with Dr. Pollard's statements that (1) Defendant did not "flat-out"

18   deny interpreter services and (2) Defendant did not fail to do what was necessary to meet

19   the fictional deaf grandmother's needs for reasonable accommodations. (*Id*. at 6-7.)

20   Plaintiff contends that these statements are conclusions of law and thus should be

21   excluded. (*Id*.) In response, Defendant contends that these statements are not legal

22   opinions or conclusions but rather are opinions on an "ultimate issue" in the case and

23   thus, pursuant to Federal Rule of Evidence 704, are not automatically objectionable on

24   that basis. (Doc. 70 at 7.)

25       "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an

26   opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523

27   F.3d 1051, 1058 (9th Cir. 2008); *see also United States v. Boulware*, 558 F.3d 971, 975

28   (9th Cir. 2009) (trial court did not abuse its discretion in excluding expert testimony in

1    the form of a legal opinion).

2         As discussed above in Section IV(D), Dr. Pollard's application of his methodology

3    to the issue of whether the fictional deaf grandmother required an ASL interpreter as a

4    reasonable accommodation for her deafness is inadmissible.[1] Because Dr. Pollard may

5    not testify to his opinion that an ASL interpreter was not a reasonable accommodation

6    under these circumstances, he likewise may not testify to his conclusion, which follows

7    from that opinion, that Defendant did not fail to provide that reasonable accommodation.

8    In other words, because Dr. Pollard may not opine on the issue of whether the

9    grandmother needed the requested reasonable accommodation, he may not opine on

10   whether that request was properly denied because that conclusion rests entirely on the

11   inadmissible portions of his opinion.

12        Furthermore, the Court finds that Dr. Pollard's conclusion that Defendant did not

13   fail to meet the fictional deaf grandmother's reasonable accommodation needs is a legal

14   conclusion and is also inadmissible on that basis. *See Nationwide Transp. Fin.*, 523 F.3d

15   at 1058; *see also* Doc. 65 at 19-20 (denying summary judgment on the issue of whether

16   Defendant violated the Americans with Disabilities Act by failing to provide a reasonable

17   accommodation in the form of an ASL interpreter).

18        **F. Dr. Pollard's statements regarding Defendant's employee Mr. Ommegard**

19   **are inadmissible.**

20        Plaintiff argues that Dr. Pollard's report improperly offers opinions as to

21   Defendant's employee's state of mind. (Doc. 69 at 7-8.) Plaintiff argues that Dr. Pollard's

22   statements as to the state of mind of Defendant's employee Mr. Ommegard,[2] are

23   improper because they are subjective and rest on assumptions not based on Dr. Pollard's

24   knowledge or experience. (*Id.*) In response, Defendant contends that Dr. Pollard's

25

26   [1] Also inadmissible is Dr. Pollard's testimony that Defendant did not fail or refuse to
     provide an ASL interpreter. The Court finds that such testimony would not be helpful to
27   the jury because the jury can evaluate for itself, based on the recorded conversations
     between Plaintiff's tester and Defendant's employee, whether Defendant failed or refused
28   to provide an ASL interpreter.
     [2] Mr. Ommegard is Defendant's Community Sales Director, with whom Plaintiff's tester
     toured the assisted living facility in June 2016. (*See* Doc. 65 at 4.)

1  statements regarding Mr. Ommegard's intentions during his conversation with Plaintiff's

2  tester are "interpretations" that point out information Plaintiff's tester failed to provide.

3  (Doc. 70 at 7.) Defendant argues that the point of Dr. Pollard's opinions regarding Mr.

4  Ommegard's statements is to show Plaintiff's tester's failure to clearly express her

5  fictional deaf grandmother's need for an interpreter. (*Id.*)

6       The Court agrees with Plaintiff that Dr. Pollard's testimony regarding Mr.

7  Ommegard's intentions, state of mind, and scope of authority is not admissible. Dr.

8  Pollard did not explain how he applied his methodology to Mr. Ommegard's

9  communications with Plaintiff's tester. Furthermore, Dr. Pollard's opinions regarding Mr.

10  Ommegard's statements appear to be subjective and not based on his knowledge or

11  experience. Dr. Pollard testified during the *Daubert* hearing that he did not review Mr.

12  Ommegard's job description or qualifications and knew nothing about him. Thus, his

13  expert testimony on this matter is not reliable and will be excluded.[3]

14       Accordingly,

15       **IT IS ORDERED** that Plaintiff's Motion in Limine to Preclude Testimony of

16  Defense Rebuttal Expert Robert Q. Pollard. (Doc. 69) is **granted in part and denied in**

17  **part** as follows:

18       (1) Dr. Pollard's testimony regarding whether an ASL interpreter was a reasonable

19  accommodation for the fictional deaf grandmother is **inadmissible.**

20       (2) Dr. Pollard's testimony regarding whether Defendant failed to provide a

21  reasonable accommodation is **inadmissible.**

22       (3) Dr. Pollard's testimony regarding the intentions, state of mind, and scope of

23  authority of Defendant's employee Mr. Ommegard is **inadmissible**.

24  . . . .

25  . . . .

26  . . . .

27  [3] Dr. Pollard may testify generally to the interactions and communications between Mr.

28  Ommegard and Plaintiff's testers in order to explain his opinions. His testimony regarding Mr. Ommegard is inadmissible only to the extent that he reaches conclusions about Mr. Ommegard's state of mind and/or scope of authority.

1    (4) Dr. Pollard's testimony is otherwise **admissible**.

2    Dated this 13th day of October, 2021.

3

4

5

6    _____
     Honorable Rosemary Márquez
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28