WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Fair Housing Council, | No. CV-19-00180-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| WG Scottsdale LLC, | |
| Defendant. | |

On May 16, 2022, a jury returned a verdict in favor of Plaintiff Southwest Fair Housing Council on its claims under the Americans with Disabilities Act ("ADA"), Fair Housing Act ("FHA") and Arizona Fair Housing Act ("AZFHA"). (Doc. 120.) The Clerk of Court entered judgment on May 17, 2022. (Doc. 123.) The jury awarded Plaintiff $100,000 in punitive damages and $1.00 in nominal damages. (*Id.*; Doc. 120.) Presently pending before the Court is Defendant WG Scottsdale LLC's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial. (Doc. 134.)[1] Plaintiff responded in opposition (Doc. 147) and Defendant replied (Doc. 149). For the following reasons, the Motion will be denied.

. . . .

---

[1] Other pending motions will be resolved separately.

## I. Renewed Motion for Judgment as a Matter of Law[2]

During trial, Defendant orally moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on Plaintiff's claims. (Doc. 110; Doc. 132 at 128-129.) Defendant argued that the evidence presented at trial was insufficient to show that the accommodations it offered, i.e., a whiteboard or lip-reading, did not meet the standard for providing effective communication necessary to enable the prospective resident to fully and equally enjoy Defendant's facility. (Doc. 132 at 128.) Plaintiff argued in response that because Defendant denied its requests for an ASL interpreter, despite knowing that the prospective tenant was deaf and used ASL to communicate, a reasonable juror could find that Defendant had denied a request for a reasonable accommodation. (*Id.* at 128-129.) The Court denied the Rule 50(a) oral motion. (*Id.* at 129.)

In its Rule 50(b) Renewed Motion for Judgment as a Matter of Law, Defendant argues that the evidence presented at trial was insufficient to show that it refused to make a reasonable accommodation that was necessary for the prospective resident to obtain an "equal opportunity to use and enjoy a dwelling," as required for a violation of the FHA or AZFHA. (Doc. 134 at 11.) Defendant contends that the evidence does not support a conclusion that the requested ASL interpreter was "necessary" within the meaning of the FHA and AZFHA. (*Id.* at 11-12.) In support of its argument, Defendant cites to the Third Circuit Court of Appeals' decision in *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105-07 (3d Cir. 2018), in which that Court stated that "[f]or a housing accommodation to be 'necessary' under the Act, it must be *required* for that person to achieve equal housing opportunity, taking into account the alternatives on offer." *Vorchheimer*, 903 F.3d at 103 (emphasis added). Defendant contends that, because Plaintiff never indicated that Defendant's proposed accommodations, i.e. a whiteboard or lipreading, would *not* be effective means of communicating with the prospective resident, Plaintiff failed to show that an ASL interpreter was necessary to provide the prospective

---

[2] As the parties are familiar with the facts of this case, the Court discusses only those facts pertinent to the pending Motion.

resident with full and equal access to Defendant's facility. (*Id.* at 13-15.) Likewise, Defendant argues that the evidence does not support the jury's verdict on Plaintiff's ADA claim because there is no evidence that Defendant knew an ASL interpreter was necessary or that it refused to provide a reasonable accommodation for effective communication. (*Id.* at 15-16.) In other words, Defendant argues that its proposed accommodations of a whiteboard and/or lipreading fulfilled the FHA's and ADA's requirement for it to provide effective communication necessary to enable the prospective resident to fully utilize its facility.

Defendant further argues that the evidence is insufficient to support the punitive damages award. (*Id.* at 16-18.) Defendant compares its conduct in this case to that of defendants in other housing rights cases in which plaintiffs received punitive damages and contends that, in comparison, its conduct did not rise to a level justifying punitive damages. (*Id.* at 16-17.) Defendant maintains that because Plaintiff's testers did not convey that an ASL interpreter was necessary but merely requested one, and because Defendant showed willingness to accommodate the prospective deaf resident, there was insufficient evidence to support a finding that Defendant acted in the face of a perceived risk that it was violating federal law. (*Id.* at 16-18); *see Kolstad v. Am. Dental Assn*, 527 U.S. 526, 536-37 (1999). Defendant therefore asks the Court to vacate the punitive damages award as a matter of law.[3]

In response, Plaintiff argues that Defendant has not met the standard for granting a Rule 50(b) Motion. (Doc. 147.) Plaintiff argues that the evidence presented at trial reasonably supported the jury's conclusion that an ASL interpreter was a necessary accommodation and that therefore, Defendant's refusal to provide it violated the FHA, AZFHA, and ADA. (*Id.* at 3-4.) Plaintiff points to the following evidence that was presented at trial: (1) Plaintiff's expert witness testified that an ASL interpreter would be necessary for a prospective deaf resident who used sign language in order for him to

---

[3] Alternatively, as discussed below, Defendant asks the Court to grant it a new trial on punitive damages and/or reduce the punitive damages award to comport with due process. (*Id.* at 18.)

communicate with Defendant's employees regarding contractual, financial, and health matters, and lipreading or a whiteboard would not adequately meet those communication needs; (2) Plaintiff's tester stated that the prospective resident used sign language, that she had difficulty communicating with him due to her lack of knowledge of sign language, and that she was concerned about Defendant's employees' ability to communicate with him without an ASL interpreter present for at least some of their communications; (3) Defendant's employee explicitly stated that the facility would not provide an ASL interpreter for the prospective resident but would provide a whiteboard and a phone system for hearing-impaired individuals; (4) Defendant's employee explicitly stated that an ASL interpreter would not be provided for discussions regarding financial or documentation paperwork; (5) another one of Defendant's employees affirmed the prior denial of an ASL interpreter and stated that it was consistent with Defendant's "guidelines and protocol"; (6) another one of Defendant's employees affirmed that Defendant would not provide an ASL interpreter despite knowing that the prospective resident was deaf and used sign language to communicate. (*Id.* at 4-8.) Based on this evidence, Plaintiff contends that there was sufficient evidence presented at trial to support the jury's findings. (*Id.* at 9-10.)

Plaintiff further argues that Defendant misstates the legal standard for showing that an accommodation is "necessary" for a disabled person. (*Id.* at 3-4.) Plaintiff contends that the applicable standard under Ninth Circuit Court of Appeals precedent is that a plaintiff must show the "accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling." *Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)). The Ninth Circuit further clarified the standard, stating, "[t]o prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Giebeler*, 343 F.3d at 1155 (internal citation and quotation omitted). Under this standard, Plaintiff contends, the evidence

1 could reasonably be interpreted to show that an ASL interpreter was a necessary accommodation.

In reply, Defendant argues that it did not violate the applicable anti-discrimination laws because Plaintiff's tester never conveyed to Defendant's employees either that a whiteboard would not meet the prospective resident's needs for lease signing or any other situation, or that the prospective resident needed an ASL interpreter for lease signing or in any other situation. (Doc. 149 at 3.)

### A. Legal Standard

A party may move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) before a case is submitted to the jury. A Rule 50(a) motion for judgment as a matter of law must "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

A party may renew a motion for judgment as a matter of law under Rule 50(b) no later than 28 days after the entry of judgment in a jury trial. Fed. R. Civ. P. 50(b). "[A] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Eng'g, Inc. v. West Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) (internal quotation marks omitted).

"The test [on a Rule 50(b) motion] is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016) (internal quotation marks omitted)). In considering a Rule 50(b) motion, the court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (internal quotation and alteration marks omitted)). In ruling on a Rule 50(b) motion, the court may "(1) allow judgment on the verdict . . . ; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

**B. Discussion**

Defendant has not established that it is entitled to judgment as a matter of law pursuant to Rule 50(b). Though the jury could have reached a verdict in Defendant's favor based on the evidence presented at trial, the jury was not required to do so. There was sufficient evidence presented at trial from which a reasonable jury could conclude that an ASL interpreter was necessary for the prospective resident's full and equal enjoyment of the facility—or even for him to be able to meaningfully participate in signing a lease agreement or discussing his needs with Defendant's employees prior to moving in. Although the jury could have concluded, based on Plaintiff's responses to Defendant's inquiries regarding the prospective resident's hearing and communication abilities, that a whiteboard or lipreading would have been a reasonable accommodation that would have provided effective communication, it was not required to reach that conclusion. The evidence at trial showed that Plaintiff repeatedly referred to the prospective resident's use of sign language and requested an ASL interpreter for specific needs related to the prospective resident's housing at Defendant's facility, and that, despite knowing that the prospective resident was deaf and used sign language to communicate, Defendant explicitly and repeatedly stated it would not provide an ASL interpreter. The jury's interpretation of these events and communications as a denial of a reasonable accommodation in violation of the ADA and FHA was reasonable.

Furthermore, Defendant's citation to a Third Circuit Court of Appeals decision that could be interpreted to establish a higher burden for proving that an accommodation is "necessary" under the FHA does not provide grounds for changing this Court's legal analysis set forth in its Order denying summary judgment to Defendant on Plaintiff's ADA, FHA, and AZFHA claims. (*See* Doc. 65 at 15-25.)[4] In that Order, relying on the Ninth Circuit Court of Appeals precedent cited here by Plaintiff, in addition to other cases, the Court found that a question of fact existed as to whether Defendant's proposed accommodations "would have provided effective communication and equal access for the

---

[4] Notably, Defendant did not move for reconsideration of that Order pursuant to LRCiv 7.2(g).

- 6 -

deaf individual, or whether an ASL interpreter was necessary" to fulfill Defendant's obligations to the prospective resident under the law. (Doc. 65 at 19.) The Court denied summary judgment to both parties on the issue that Defendant now raises in its Motion, finding that the trier of fact would have to determine, based on the evidence presented at trial, whether Defendant had violated the ADA, FHA, and AZFHA by refusing to provide a reasonable accommodation necessary for effective communication. (Doc. 65 at 19-21, 24-25.) Defendant's argument that the Court should now change its analysis based on Defendant's proffered interpretation of out-of-circuit precedent is unavailing. The evidence, construed in the light most favorable to the non-moving party, supports the jury's conclusion that Defendant violated the ADA, FHA, and AZFHA, and therefore judgment as a matter of law in favor of Defendant is inappropriate.

Furthermore, the Court declines to vacate the punitive damages award as a matter of law. Following trial, the Court instructed the jury that it could award Plaintiff punitive damages if it found that Defendant engaged in a reckless disregard of the Plaintiff's protected rights by discriminating in the face of a perceived risk that its actions would violate federal law pursuant to the ADA or FHA. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-37 (1999). The instruction was based in part on evidence that Defendant's parent company, Atria Senior Living, had previously entered a consent decree with another fair housing organizational plaintiff in New York regarding its refusal to provide ASL interpreters to deaf residents. (*See* Docs. 117 at 19-20, 131 at 124, Doc. 132 at 12, Doc. 147-5.) In light of this history, in addition to other evidence presented at trial, it was reasonable for the jury to conclude that Defendant acted in the face of perceived risk that it could violate federal law when it refused to provide an ASL interpreter to a prospective deaf resident who requested one.

## II.     Motion for New Trial

In its Motion for a New Trial, Defendant argues that it is entitled to a new trial because the evidence presented at trial is legally insufficient to support the jury's conclusion that an ASL interpreter was a reasonable accommodation that was necessary

for the prospective resident to use and enjoy Defendant's facility. (Doc. 134 at 2.) Defendant further argues that it should receive a new trial on punitive damages because, it argues, an analysis of the factors set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996) for assessing the reasonableness of a punitive damages award yields the conclusion that the award is unsustainable. (Doc. 134 at 18.) Defendant argues as to each factor that (1) Defendant's conduct was not sufficiently reprehensible to justify the punitive damages award because no one was harmed, the deaf prospective resident was not financially vulnerable, and this is Atria's first violation; (2) the jury did not award compensatory damages and the ratio of punitive to nominal damages is 100,000 to 1; and (3) the HUD civil penalty amounts for a first-time violation of the FHA provide for a maximum civil penalty of $19,787. (Doc. 134 at 17.)

In response, Plaintiff argues that the Court should deny the Motion for a New Trial for the same reasons it should deny the Motion for Judgment as a Matter of Law—namely, that the evidence was sufficient to support the jury's verdict, including the finding that an ASL interpreter was a reasonable accommodation necessary for effective communication, and therefore the Court should not disturb the verdict. (Doc. 147 at 14-15.)

Plaintiff further argues that the punitive damages award was reasonable, considering that (1) Defendant's parent company, Atria Senior Living, had previously entered into a consent decree with another fair housing organizational plaintiff in New York regarding its refusal to provide ASL interpreters to deaf residents, and had agreed in that case to alter its procedures and practices to comply with federal anti-discrimination law; (2) Atria trained its employees on the same obligations for which it was sued here; and (3) testimony at trial indicated that Atria knew it was illegal to implement a policy of refusing to provide ASL interpreters for deaf residents. (Doc. 147 at 16.) Plaintiff further contends that, pursuant to the factors set forth in *Gore*, the punitive damages award of $100,000 is reasonable because (1) substantial punitive damages may be awarded even if compensatory damages are not; (2) acts of knowing or intentional discrimination qualify

as "reprehensible;" (3) the Ninth Circuit Court of Appeals has upheld similar punitive damages awards in housing discrimination cases, including comparable ratios between punitive and nominal damages; (4) the national scope of Atria's assisted living facilities justifies the award due to the difficulty of enforcement and the extent of potential harm that could occur as a result of its discriminatory practices; and (5) Defendant's contention that the maximum civil penalty for its violation is $19,787 is misleading, and the true maximum penalty is at least $115,054 because Atria is a repeat violator due to the previous New York case. (*Id.* at 17-18); *see* 42 U.S.C. § 3614(d)(1)(C)(i); 28 C.F.R. § 85.5, at Table 1 (showing current penalty amounts).

### A. Legal Standard

A court may grant a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Such reasons may include a verdict that is contrary to the clear weight of the evidence, a verdict based upon false or perjurious evidence, or to prevent a clear miscarriage of justice." *Crowley v. Epicept Corp.*, 883 F.3d 739, 751 (9th Cir. 2018) (per curiam) (internal quotation and alteration marks omitted). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). The Court "is not required to view the trial evidence in the light most favorable to the verdict" and may weigh the evidence and assess witness credibility in determining whether a new trial is "necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

A grossly excessive punitive damages award "can violate '[e]lementary notions of fairness enshrined in our constitutional jurisprudence.'" *Arizona v. ASARCO LLC*, 733 F.3d 882, 885 (9th Cir. 2013), *on reh'g en banc*, 773 F.3d 1050 (9th Cir. 2014)[5] (citing

---

[5] On rehearing en banc, the Ninth Circuit affirmed a $300,000 punitive damages verdict in a Title VII sexual harassment case in which only nominal damages were otherwise awarded, holding in part that (1) the $300,000 punitive damages award did not violate due process; (2) it is improper to examine the ratio of nominal damages to punitive

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996)). In assessing the reasonableness or excessiveness of a punitive damages award, the Supreme Court has set forth three factors that a Court may consider: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio between punitive damages and actual harm, as measured by compensatory damages, and (3) the civil or criminal penalties that could be imposed for comparable misconduct. *Gore*, 517 U.S. at 575-84. A jury may award punitive damages even if it does not award compensatory or nominal damages. *See ASARCO LLC*, 733 F.3d at 888. However, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *ASARCO LLC*, 773 F.3d at 1055. "[A] higher ratio may be appropriate where the conduct is especially egregious, but results in minimal economic damages." *ASARCO LLC*, 773 F.3d at 1055 (internal citation omitted).

### B. Discussion

As discussed above, the Court finds that the jury's verdict was reasonably based on the evidence presented during the three-day trial and will therefore deny Defendant's Motion for a New Trial. In support of its Motion for a New Trial, Defendant presents essentially identical arguments regarding the necessity of the accommodation sought and the conclusions it posits the jury should have drawn from the parties' communications regarding reasonable accommodations. Those arguments fail for the same reasons discussed above.

With respect to Defendant's argument that it should receive a new trial on punitive damages, the Court finds that the jury's punitive damages award was not grossly excessive such that it violates "elementary notions of fairness enshrined in our constitutional jurisprudence." *ASARCO LLC*, 733 F.3d at 885. For the reasons discussed above in Section I(B), *supra*, it was reasonable for the jury to conclude that Defendant's refusal to provide an ASL interpreter to a prospective deaf resident was reprehensible.

---

damages in determining whether a punitive damages award complies with due process; and (3) the employer's conduct was sufficiently reprehensible to support the punitive damages award. *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

*See ASARCO LLC*, 733 F.3d at 886.

Regarding the second factor, the lack of a compensatory damages award does not necessarily undermine a punitive damages award. *See ASARCO LLC*, 733 F.3d at 888. The circumstances present in this case—in particular, that Plaintiff is a fair housing organization whose mission, in part, is to ensure equal housing access and opportunities for deaf individuals—are such that a punitive damages award without a compensatory damages award was reasonable and justified.

The third factor also fails to support Defendant's request for a new trial on punitive damages. Based upon 28 C.F.R. § 85.5, Table 1, the maximum civil penalty for the FHA and ADA violations found against Defendant in this case could be as high as $437,290. Table 1 reflects the following civil penalties for violations of the FHA and ADA after May 9, 2022: (1) $115,054 for a first FHA violation; (2) $230,107 for subsequent FHA violations; (3) $103,591 for a first ADA violation; and (4) $207,183 for subsequent ADA violations. 28 C.F.R. § 85.5, at Table 1. Thus, were Atria considered a repeat violator due to the prior New York case, the maximum civil penalties for the ADA and FHA violations found in this case would be $437,290. The punitive damages award of $100,000 is significantly less.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment as a Matter of Law or, Affirmatively, for a New Trial (Doc. 134) is **denied**.

Dated this 8th day of August, 2022.

Honorable Rosemary Márquez
United States District Judge