**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Southwest Fair Housing Council, | No. CV-19-00180-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| WG Scottsdale LLC, | |
| Defendant. | |

Before the Court is Defendant' WG Scottsdale LLC's Proposed Plan to Comply with the Court's Order Granting Permanent Injunction. (Doc. 161.) Plaintiff filed a Response to the Plan (Doc. 167), Defendant filed a Reply (Doc. 171), and Plaintiff filed a Sur-Reply (Doc. 173.) The proposed Plan of Action and subsequent briefing were filed in response to the Court's Order granting Plaintiff permanent injunctive relief and requiring Defendant to, among other things, "create a proposed plan of action to ensure that its staff and other representatives properly comply with their requirements to ensure timely access to sign language interpreters when necessary. This plan should address, at minimum, training and enforcement measures to ensure proper oversight and compliance." (Doc. 154 at 6.)

Defendant submitted its proposed plan, which provides the following information. (Doc. 161.) Defendant explains that it owns one senior living community, called Atria Park at Sierra Pointe ("Sierra Pointe"). (*Id*.) Atria Management Co. LLC ("Atria") manages the

Sierra Pointe facility pursuant to a management agreement with Defendant. (*Id.*) Atria's Anti-Discrimination Guidelines ("Guidelines") inform all staff members that the Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability and "promotes the equal enjoyment and access to" the "goods, services, facilities, privileges, advantages, and accommodations" at Sierra Pointe. (Doc. 161-1.) The Guidelines further inform staff members that the Fair Housing Act ("FHA") prohibits discrimination on the basis of disability and requires that all individuals, whether disabled or not, have "the same terms, conditions, or privileges of the rental of a dwelling or in offering services." (*Id.*) The Guidelines further state that Sierra Pointe "shall make reasonable accommodation (free of charge) for all individuals living at or visiting the community who are deaf or hard of hearing." (*Id.*) The Guidelines list examples of reasonable accommodations, including a whiteboard, a certified sign language interpreter for "material conversations" such as "tours, residency agreement review, assessment, etc.," "visual prompt devices," and "communication devices." (*Id.*)

Defendant further states that its training program, intended for use by the Executive Director and all staff members who have public contact, instructs staff on how to respond to requests for reasonable accommodations including sign language interpreters. (Doc. 161 at 2.) That training program, attached as an Exhibit to Defendant's filing, includes one example involving a potential deaf resident. (Doc. 161-1 at 22.) The example states, "A family member of a potential resident who is deaf inquires what we would do to assist the potential resident with communications. Specifically, the family member requests we provide a 24/7 sign language interpreter and install auxiliary aides in the apartment (e.g., text telephone, strobe light for doorbell, other communication devices.) How do you respond? Do you agree to these requests?" (*Id.*) The training provides relevant follow-up information: "(1) The obligation to provide auxiliary aides and services is flexible and depends upon our assessment of the particular facts, circumstances, and needs of our residents; (2) Inform the resident/family member of our assessment and move-in process and that we want to determine whether the community is appropriate for the resident

despite any disability; (3) The resident's disability shall not be a deciding factor on whether the community is appropriate; (4) Contact your RVP and Operations Counsel." (*Id.* at 23.)

Defendant states that it will take the following steps to comply with the ADA, the FHA, and all applicable Court Orders: (1) "ensure that all staff receive, review, and acknowledge its anti-discrimination policies"; (2) "conduct the anti-discrimination training described [herein] for the Executive Director and all staff who interact with . . . members of the public on an annual basis and require acknowledgement sheets showing who attended each training session"; (3) "direct its staff to document any requests for a sign language interpreter and to escalate those requests to Operations Counsel to ensure proper oversight;" (4) "document whether an interpreter was provided, when an interpreter was provided, and why an interpreter was not provided if any request for an interpreter is denied"; (5) "maintain all the records described in this paragraph"; (6) "ensure that it has an agreement in place with at least one provider of sign language interpreter services to ensure that it can readily and timely obtain an interpreter if one is necessary." (Doc. 160 at 2-3.)

Plaintiff's Response states first that the Court should enjoin Atria to ensure that the Sierra Pointe facility implements the terms of the injunctive relief. (Doc. 167 at 2.) Plaintiff argues that, under Federal Rule of Civil Procedure 65(d)(2), an injunction can bind not only a party but also the party's "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" if they receive actual notice of the injunction. Since Atria manages staffing and training at Sierra Pointe, Plaintiff contends that the injunction should bind Atria. (Doc. 167 at 2.)

Plaintiff further argues that (1) Defendant's policies and training are too vague to ensure that Sierra Pointe will accommodate individuals with disabilities; (2) Defendant does not indicate how Sierra Pointe and its public-facing employees will implement the policies; and (3) the proposed policies and training materials omit important information. Plaintiff counter-proposes a plan of action. (*Id.* at 2-3.) Plaintiff proposes an alternative, detailed plan that includes (1) contact information on Atria's website specifically linking

to requests for "special needs and accommodations"; (2) training for staff on how to handle those requests; (3) procedures for handling those requests; (4) biannual "role-play" training for public-facing employees; (5) biannual "testing" by having Atria randomly make a request for accommodations through the website or over the phone; (6) record-keeping requirements; and (7) enforcement. (*Id*. at 4-7.)

Defendant's Reply argues that (1) Plaintiff lacks constitutional standing to pursue injunctive relief against Atria; (2) there is no basis to expand the Order granting injunctive relief to Atria, who was never added as a Defendant; (3) Atria is already bound by the injunctive relief to the extent that it acts as an agent of Defendant, which it does in managing the Sierra Pointe facility through its contract with Defendant, (4) Plaintiff's proposed plan is unnecessarily burdensome and beyond the scope of what is required in the Order granting injunctive relief; and (5) Defendant's current training materials and policies are sufficient and effective. (Doc. 171.)

Plaintiff's Sur-Reply contends that the capacity to enforce the injunctive relief against Atria is supported by Federal Rule of Civil Procedure 65(d)(2) because Atria is an agent of Defendant and/or a "person in active concert or participation" with Defendant. (Doc. 173 at 2-3.) Thus, Plaintiff argues that Defendant's constitutional standing argument is misplaced and misleading. (*Id*.) Plaintiff argues that Atria is solely responsible for providing and implementing all anti-discrimination training at Sierra Pointe, and thus the injunctive relief pertaining to training must apply to Atria to be effective. (*Id*. at 3.) Plaintiff further states that there is no issue of actual notice to Atria of the injunctive relief in this matter because it served Atria with the injunction on November 10, 2022. (*Id*. at 5.)

As an initial matter, the Court agrees with Plaintiff that there is no issue concerning lack of standing with respect to the injunctive relief against Atria. It is undisputed that Atria is an agent of Defendant, as well as in active concert and participation with Defendant, insofar as Atria actively manages Sierra Pointe and provides and implements the applicable anti-discrimination policies and trainings at Sierra Pointe. Accordingly, Atria is bound by the injunctive relief granted by this Court pursuant to Federal Rule of Civil Procedure

65(d)(2)(B) and (C). Thus, where the Order instructs Defendant to take certain actions in accordance with the injunctive relief, such instructions apply equally to Atria within the context of its relationship with Defendant. However, to the extent that Plaintiff seeks to enjoin Atria outside of and apart from its management of Defendant's facility at Sierra Pointe, such an injunction would be outside the scope of this litigation. The injunctive relief in this case applies only to Defendant and its management of the Sierra Pointe facility. As Defendant has a contract with Atria to manage the Sierra Pointe facility, the injunctive relief set forth applies to Atria within the context of its management of that facility, but not otherwise.

The Court has reviewed the parties' proposed plans. (*See* Docs. 161, 167.) The Court finds that Defendant's proposed plan does not adequately convey the steps Defendant will take to ensure that its public-facing staff members properly comply with their requirements to ensure timely access to sign language interpreters when necessary, as required by the Order granting injunctive relief. (Doc. 154.) Furthermore, Defendant's training materials do not adequately convey employees' duties and responsibilities under the ADA and the FHA. Accordingly, the Court will direct Defendant, through Atria, to implement the following Plan of Action and update its training materials as follows.

**I.      Plan of Action**

To ensure that Defendant and its respective officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them, including all Atria staff employed at Sierra Pointe and involved in managing or operating the Sierra Pointe facility, comply with the ADA and FHA requirements regarding non-discrimination against individuals with disabilities, the Court orders Defendant to take the following steps:

(1) The website for Sierra Pointe shall include a distinct tab titled "Accommodations" that will notify visitors to the website of the ability to request information about accommodations for individuals with disabilities and to request accommodations.

(2) The tab will redirect to another page that includes basic information regarding the rights of individuals with disabilities to equal enjoyment of housing facilities under the ADA and FHA (see below training information). The page will also include contact information, including an email address and phone number, which the visitor can use to request more information or to request an accommodation.

(3) Emails and phone calls resulting from these contacts will be routed to the appropriate staff member(s), who will have received training on how to handle them in an ADA- and FHA-compliant manner.

(4) Any requests for information about Sierra Pointe's ability to accommodate the needs of individuals with disabilities shall be responded to within 72 hours, thus beginning the required interactive process.

(5) Any requests for accommodations for an activity such as a tour of the facility or a residency assessment, which may require a sign language interpreter, shall be responded to within 48 hours. The approval or denial of such requests shall be documented, along with the reasons why the request was approved or denied. In the event such a request is approved, staff shall take appropriate action to provide and coordinate the accommodation. In the event such a request is denied, staff shall respond to the person requesting the accommodation and explore whether another accommodation may meet the individual's needs.

(6) Any requests for accommodations shall be escalated to the appropriate supervisory staff if needed.

(7) Each Sierra Pointe employee shall receive a copy of Atria's non-discrimination policies, guidelines, procedures, and training materials upon hire, including this Plan of Action. Current employees shall receive a copy within thirty (30) days of the date this Order is issued. Each employee's receipt of this information shall be documented.

(8) Each Sierra Pointe employee who interacts with the public, prospective residents, residents, visitors, or family members, including the Executive Director, shall receive annual training on Atria's non-discrimination policies, guidelines, and procedures. The completion of such trainings shall be documented.

(9) At least once per year, Atria will randomly "test" its staff by making a request for an accommodation through the contact information provided on the website. This "test" need not be detailed or complex but may include something like a request for a sign language interpreter during a tour for a prospective resident who is deaf. These tests and the results shall be documented.

(10) All requests for accommodations and modifications for individuals with disabilities shall be documented, along with the reasons why such requests were approved or denied.

(11) Sierra Pointe shall establish a relationship with at least one local provider of sign language interpretation services, to ensure that a sign language interpreter will be available in a timely manner. This relationship shall be documented in writing. Sierra Pointe may also establish a relationship with a video remote interpretation service if it finds that such a service would assist it in meeting its responsibility to provide effective communication.

(12) If Atria discovers a violation of any of the terms set forth in the Plan of Action, it shall take appropriate action, including but not limited to remedial training, discipline, writing up the employee, unpaid leave, or termination. If Atria discovers such a violation, it shall notify the Court within sixty (60) days and shall inform the Court what actions it has taken in response to the violation. Such violations shall be documented.

## II. Training Updates

A more detailed and thorough explanation of the requirements of the ADA as appliable to deaf individuals must be included in Defendant's training materials. The

example involving a deaf individual in the current training materials does not adequately inform staff members of their obligations under the ADA and FHA to ensure that they are aware of their responsibility not to discriminate based on deafness or any other disability. Stating that Sierra Pointe's obligation to provide aides and services for individuals with disabilities is "flexible and depends on our assessment" of an individual's circumstances and needs does not explain the law in such a way that a typical employee would understand his or her legal obligations. Defendant must add and include in its training materials—specifically the portion of the training that explores how to address a request for a sign language interpreter for a potential deaf resident—more detailed and specific information about ADA requirements for public accommodations. The training shall include, at a minimum, the following information:

Title III of the ADA prohibits discrimination based on disability, including deafness, by places of public accommodation. Title III provides that a public accommodation must provide an individual with a disability with full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the public accommodation. It is discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual with a disability. If modifications or accommodations to policies, practices, or procedures are necessary to provide full and equal access to goods, services, facilities, privileges, advantages, or accommodations, those modifications or accommodations shall be made unless they would create an undue burden or fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. Accommodations must provide meaningful access. Outright denial of a deaf individual's request for a sign language interpreter violates the ADA. A public accommodation must consult with the individual with a disability regarding his or her communication needs and abilities whenever possible, but the ultimate decision as to what accommodation to provide rests with the place of public accommodation, as long as it provides effective communication. While there may be instances when communication via written notes or a whiteboard is ADA-compliant, there

may be other instances, such as those involving more complex communications, where a sign language interpreter is required. Staff shall not outright deny a request for a sign language interpreter or tell residents, prospective residents, or their family members that it is their responsibility to provide or pay for an interpreter. Rather, when requests for sign language interpreters for interactions such as tours, resident assessments, residency agreement discussions and signing, and participation in group activities, as well as requests for other reasonable accommodations for deaf individuals such as doorbells with flashing lights, are received, staff shall engage in an interactive process with the individual until an understanding is reached regarding the deaf individual's needs and abilities for effective communication. Staff shall then provide the accommodation or modification that provides effective communication and equal access under the given circumstances. Staff shall respond promptly to requests for sign language interpreters and other accommodations and modification. If a staff member is unsure of how to handle a request for an accommodation or modification, he or she shall escalate the matter to a supervisor.

Dated this 30th day of March, 2023.

_____
Honorable Rosemary Márquez
United States District Judge